PRIME LEASING, INC. and ) Appeal from the  

WECHSLER AND COMPANY, INC., ) Circuit Court of 

) Cook County.

Plaintiffs-Appellants, ) 

) 

v. ) 

) No. 97 CH 12129

ROBERT A KENDIG, MELVYN J. ESTRIN, ) (Transferred to Law

ABBEY J. BUTLER, WILLIAM A. LEMER, ) Division)

HARVEY A. FAIN, ALFRED H. KINGON and ) 

WAYNE PYRANT,                ) 

) 

Defendants-Appellees, ) 

)

DAVID A. BRAINARD and SHELDON W. FANTLE,)    Honorable

)    Sheldon Gardner, 

Defendants. )    Judge Presiding.

JUSTICE REID delivered the opinion of the court:

The appellants, Prime Leasing, Inc. (Prime), and Wechsler & Co., Inc. (Wechsler), appeal the trial court's order which granted the defendants', Robert A. Kendig, David A. Brainard, Melvin J. Estrin, Abbey J. Butler, William A. Lemer, Harvey A. Fain, Alfred H. Kingon, Sheldon W. Fantle and C. Wayne Pyrant, motions to dismiss the plaintiffs' fourth amended complaint pursuant to sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2000)).  On appeal, the plaintiffs maintain their fourth amended complaint sufficiently pleads a cause of action for: (1) common law fraud, (2) negligent misrepresentation, (3) consumer fraud pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et
 
seq
. (West 2000)), and (4) breach of fiduciary duty.  For the reasons that follow, we affirm the decision of the trial court.

THE FACTS

This matter arises out of the 1996 bankruptcy of Ben Franklin Retail Stores, Inc. (Ben Franklin).  Ben Franklin consisted of a group of related corporations that were involved in various aspects of the "five and dime" retail business.  Prime and Wechsler are creditors that were unable to collect their debts from Ben Franklin as a result of its bankruptcy.

Prime is a provider of financial services.  Its services include the "leasing and rental of equipment, capital equipment and related items for commercial and marketing markets."  Wechsler is a stock brokerage firm and during the relevant time period was a market maker and investor in Ben Franklin stocks and bonds.

Defendant Pyrant is a former credit manager at Ben Franklin and is represented by separate counsel on appeal.  Defendant Brainard, the former senior vice president and chief financial officer of Ben Franklin, was never served and has never appeared in this action.  Defendant Fantle is now deceased.  Fantle's estate has neither been served with the appellants' fourth amended complaint nor has it filed an appearance in this action.  The remaining six defendants, who were all former Ben Franklin directors, are represented by the same counsel and will be referred to herein as the Directors.

On December 23 1999, the appellants filed a six-count, fourth amended complaint which alleged: (1) fraud against Kendig, Brainard and Pyrant, (2) fraud against the Directors, (3) negligent misrepresentation against Brainard and Kendig, (4) negligent misrepresentation against the Directors, (5) consumer fraud, and (6) breach of fiduciary duty against the Directors.

The following statements  represent the allegations made in the appellants' fourth amended complaint.  

The appellants alleged that Wechsler purchased "several million dollars in Ben Franklin bonds" between 1995 and 1996.  Before the purchase, Wechsler reviewed and relied on "publicly available financial information issued by [the] [d]efendants concerning Ben Franklin." 

In the fall of 1995, on more than one occasion, Wechsler spoke with Brainard and Kendig, who was Ben Franklin's president, about the purported financial condition of Ben Franklin.  Wechsler alleged that both Brainard's and Kendig's representations were materially false.  The complaint states:

"Wechsler knew Ben Franklin's Revolving Credit Facility was asset based and secured by, among other things, short term accounts receivable.  Kendig misrepresented to Wechsler Ben Franklin's net account receivables and availability under the Credit Facility and thus the true value and dating of the accounts receivable ***." 

In November 1994, Ben Franklin loaned $4.94 million to Crafts Plus, Inc. (Crafts Plus), which evidenced a loan of $4.2 million and the conversion of $774,000 of accounts receivable owed to Ben Franklin.  Crafts Plus began purchasing a significant amount of inventory from Ben Franklin, and in less than a year, over $6 million was past due.  

The appellants maintained that the "[d]efendants should have disclosed the dating of the accounts receivable, should have set a reserve for bad debt for Crafts Plus, and should have disclosed that redating was authorized by management."  The complaint alleged that the defendants' failure to disclose this information mislead the appellants as to the true value of Ben Franklin.

Prime entered into a merchandising management information system lease with Ben Franklin valued at $1.851 million, on May 7, 1996.  Prime alleged that prior to entering into the leasing agreement, it "requested and received financial reports and other financial information *** from Ben Franklin and had additional conversations with Ben Franklin representatives regarding the financial condition of Ben Franklin."  The complaint further states: "Brainard represented that all of the financial information provided to Prime was true and accurate.  Based upon the financial reports given and the presentations made by the Ben Franklin representatives including Brainard, Prime approved and entered into the [l]ease with Ben Franklin."

The specific documents that Ben Franklin provided to Prime were Ben Franklin's Securities and Exchange Commission (SEC) form 10-Q for the nine-month period ending December 31, 1995, an internally prepared financial statement for the 11-month period ending February 28, 1996, hand-written comments from Brainard regarding what the company would report for the 12-month period ending March 31, 1996, and forecasted income and sales.  The appellants alleged that "Ben Franklin supplied this documentation and information to Prime with the knowledge and consent of all [d]efendants."

The appellants allege that before the lease between Prime and Ben Franklin was executed or prior to Wechsler purchasing Ben Franklin bonds, Ben Franklin's financial reports were altered.  Specifically, the financial reports were altered by "freshening" the dates of the accounts receivable and of inventory held by Ben Franklin and its wholly owned subsidiaries.  "Freshening" consisted of the systematic, deliberate and/or reckless alteration of the "age" of accounts receivable, and also the alteration of the "age" of the inventory by selling year-old inventory to another Ben Franklin store and deeming it "new" in the second store on the company's financial reports.  

The appellants alleged that the redating of accounts receivable was misleading and inconsistent with accounting practices and that Ben Franklin's failure to disclose this information was material to them.  The appellants alleged that they were not provided a true and accurate picture of Ben Franklin's financial condition because of its practice of redating accounts receivable.

The appellants' fourth amended complaint states: 

"The older an account receivable is, generally the less collectable it is.  By redating accounts receivable, allowing the policy without adequate oversight, and ratifying such policy and nondisclosure *** each of the [d]efendants materially understated allowance for bad debt.  The secret redating of large dollar amounts of receivables *** enabled the [d]efendants to extend the existence of Ben Franklin after its insolvency.  In November[] 1996, after disclosure of its redating bec[a]me public, Ben Franklin adjusted its allowance for bad debt in connection with receivables from $1.4 million as of March 31, 1996 to $23.8 million as of September 30, 1996."

The complaint further alleged that prior to the execution of the lease between Prime, and before Wechsler purchased Ben Franklin bonds, "approximately $33.2 million of accounts receivable were in actuality over 75 days old, and, therefore, not likely to be collected."

The appellants alleged that Ben Franklin practiced freshening so as to enhance the appearance of the company's financial reports.  Specifically, appellants maintained that Ben Franklin used financial reports to artificially inflate the financial condition of the company and thereby induce Prime to enter into the leasing agreement and to induce Wechsler to purchase Ben Franklin bonds.  The appellants alleged that had they known of Ben Franklin's "undisclosed redating of inventory and invoices and the freshening of the due dates of certain accounts receivable, [they] would not have entered into the transactions ***."

The appellants further alleged that the Directors "participated in the acts" by expressly ratifying the acts of Brainard and Kendig.  The Directors authorized the lease agreement between Ben Franklin and Prime by authorizing a resolution which was certified by Ben Franklin's assistant secretary, Gerard Para.  In the complaint, the appellants also allege that the Directors ratified a second resolution.  The complaint states: "But for the Corporate Resolution for the Prime Lease and, on information and belief, the similar Corporate Resolution for Ben Franklin's secured lenders, Wechsler would not have purchased the bonds."

On July 26, 1996, Ben Franklin filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (11 U.S.C. §1101 
et
 
seq
. (1994).  On June 24, 1997, the case was converted to a chapter 7 (11 U.S.C. §701 
et
 
seq
. (1994) liquidation.  

On March 31, 2000, Pyrant filed a motion to dismiss pursuant to section 2-615, and the Directors also filed motions to dismiss pursuant to sections 2-615 and 2-619.  The trial court granted all of the defendants' motions to dismiss, on July 24, 2000.  On August 3, 2000, the appellants timely filed a notice of appeal.

ANALYSIS

"A section 2-615 motion poses the question of whether the complaint states a cause of action upon which relief can be granted.  [Citation.]  A section 2-619 motion, on the other hand, raises certain defects or defenses and questions whether defendant is entitled to judgment as a matter of law.  [Citation.]  Since the resolution of either motion only involves a question of law, the standard of review is 
de
 
novo
.  [Citation.]  On a motion to dismiss, this court must accept all well-pleaded facts as true.  [Citation.]"  
In re Parentage of M.J.
, 325 Ill. App. 3d 826, 829 (2001).

I

Joinder of Plaintiffs

Initially, the appellees argue that Wechsler was not properly joined as a party to this action.  Section 2-404 of the Illinois Code of Civil Procedure provides in pertinent part as follows:

"All persons may join in one action as plaintiffs, in whom any right to relief in respect to or arising out of the same transaction or series of transactions is alleged to exist, whether jointly, severally or in the alternative, whenever if those persons had brought separate actions any common question of law or fact would arise.  If upon the application of any party it shall appear that joinder may embarrass or delay the trial of the action, the court may order separate trials or enter any other order that may be expedient.  Judgment may be entered for any one or more of the plaintiffs who may be found to be entitled to relief, for the relief to which he or she or they may be entitled."  735 ILCS 5/2-404 (West 2000).

Section 2-407 of the Illinois Code of Civil Procedure  provides as follows:

"No action shall be dismissed for misjoinder of parties, or dismissed for nonjoinder of necessary parties without first affording reasonable opportunity to add them as parties.  New parties may be added and parties misjoined may be dropped by order of the court, at any stage of the cause, before or after judgment, as the ends of justice may require and on terms which the court may fix."  735 ILCS 5/2-407 (West 2000).

"The objective of joinder is the economy of actions and trial convenience.  The determining factors are that the claims arise out of closely related 'transactions' and that there is in the case a significant question of law or fact that is common to the parties."  
Boyd v. Travelers Insurance Co.
, 166 Ill. 2d 188, 199 (1995), citing 
City of Nokomis v. Sullivan
, 14 Ill. 2d 417, 420 (1958).

Here, Wechsler was properly joined as a plaintiff.  While they do not arise out of the same transaction, both claims arise from a series of transactions and there exist numerous common questions of law and fact.  In particular, Prime and Wechsler's claims are based on Ben Franklin's practice of freshening accounts receivables and both appellants have named the same parties as persons taking part in the allegedly egregious redating of accounts receivables in the transactions.  As such, joinder was proper.

II 

Counts I and II Alleging Fraud

"To sustain a cause of action for fraud, plaintiffs must plead the following basic elements: statements of material facts were made; defendants must have known or believed such statements to be untrue; plaintiffs had a right to rely or were justified in relying upon those statements;  the statements were made for the purpose of inducing plaintiffs to act or rely upon them;  plaintiffs were damaged as a result of their reliance upon said statements."  
Sims v. Tezak
, 296 Ill. App. 3d 503, 509 (1998), citing 
Siegel v. Levy Organization Development Co.
, 153 Ill. 2d 534 (1992); 
In re Witt
, 145 Ill. 2d 380 (1991).  "The facts which constitute an alleged fraud must be pleaded with specificity and particularity, including 'what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made.'" 
People ex rel. Peters v. Murphy-Knight
, 248 Ill. App. 3d 382, 387 (1993), quoting 
Board of Education v. A, C & S, Inc.
, 131 Ill. 2d 428, 457 (1989).

"To support an action for fraud, the alleged misrepresentation must be one of fact and not an expression of opinion. [Citations.] Statements regarding future events are considered opinions, not statements of fact. [Citations.]  '[T]he general rule denies recovery for fraud based a false representation of intention or future conduct ***.'  [Citations.]  Even a false promise of future conduct with no current intent to fulfil that promise will not constitute fraud.  [Citations.]   An exception to the general rule exists whereby a false promise as to future circumstances may be actionable if the false statements were part of a fraudulent scheme.  [Citations.]  In determining whether a statement is one of fact or of opinion, we look to all the circumstances of the particular case. [Citation.]

In addition, statements which are nothing more than a recommendation of one's product are not representations of fact, but rather 'mere commendation or opinion' and are not actionable as fraud. [Citation.]   Such statements, as with statements of value made by a seller, are treated as expressions of opinion and if so understood, may not be the basis of an action for fraud.  [Citation.]"  
Peters
, 248 Ill. App. 3d at 387-88.

The appellants contend their fourth amended complaint sufficiently pleaded a cause of action for fraud.  The appellants argue that their complaint alleges that Kendig and Brainard provided financial information to the appellants which they verified as being accurate.  The appellants assert Pyrant is culpable because he also participated in the decision to redate accounts receivable.  The appellants maintain the financial information provided by Brainard and Kendig was false as a result of Ben Franklin's policy of redating accounts receivable.  The appellants allege that the defendants knew of Ben Franklin's accounting practice of redating and failed to disclose the information.  The appellants claim that redating violated standard accounting practices.  The Directors expressly ratified Kendig's and Brainard's conduct by issuing a corporate certification and representing that Prime could rely on its representatives' statements, and, as such, the Directors are responsible for making false statements as well.

The appellees argue that the trial court's decision is proper because the appellants failed to sufficiently plead a cause of action for fraud in their fourth amended complaint.  We agree.

As to Pyrant, the appellants' complaint fails to allege with the required particularity and specificity the exact misrepresentations that Pyrant made, when he made them and to whom he made them.  The appellants' complaint merely states that "Pyrant participated in the fraud by participating in one or more of the decisions to redate receivables ***."  This is inadequate.

As to Kendig and Brainard, the complaint again fails to allege with specificity and particularity the exact statements made by either defendant which the appellants relied on to their detriment.  The appellants' complaint only states that Brainard and Kendig represented that financial information received by the appellants was accurate.  The complaint alleges that the financial reports which it relied on did not mention the company's policy of redating.  However, the appellants failed to allege which specific statements were false, where the statements appeared and to whom they were related.  The appellants also failed to allege that they relied on any 
particular
 misrepresentations to their detriment.

As to the Directors, the appellants argue they are culpable for fraud because they endorsed Kendig's and Brainard's statements by way of a corporate resolution.  Even if this situation allowed the appellants to pierce the corporate veil and sue the Directors in their individual capacities, neither Kendig, Brainard nor Pyrant made any fraudulent statements for which the Directors could be held accountable. 

III

Counts III and IV Alleging Negligent Misrepresentation

The appellants maintain their fourth amended complaint sufficiently pleads a cause of action for negligent misrepresentation.

"To state a cause of action for negligent misrepresentation, the complaint must again allege a duty to plaintiff, a breach of the duty and injury proximately resulting from such breach.  (
Harkala v. Wildwood Realty, Inc.
 (1990), 200 Ill. App. 3d 447, 456).  Restatement (Second) of Torts § 311 (1965) provides there may be liability for negligently giving false information to another if the information causes some physical harm to the person who justifiably relies on the information.  The Illinois Supreme Court has stated the elements of a cause of action for negligent misrepresentation are essentially the same as those for fraudulent misrepresentation except the defendant need not know or believe the statement to be false; instead, the plaintiff need only allege the defendant was careless or negligent in ascertaining the truth of the statement made.  (
Board of Education 
[
of City of Chicago v. A, C & S, Inc.
], 131 Ill. 2d [428,] 452 [1989].)  The elements of fraudulent misrepresentation are (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making it; (3) the intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance.  (
Board of Education
, 131 Ill. 2d at 452.)  The defendant must have a duty to convey accurate information to plaintiff.  
Board of Education
, 131 Ill. 2d at 452."  
Snelten v. Schmidt Implement Co.
, 269 Ill. App. 3d 988, 995-96 (1995).

"In 
Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69 (1982), the Illinois Supreme Court adopted the economic loss doctrine.  'In a nutshell, [the economic loss] doctrine bars a plaintiff from recovering in negligence for losses which are purely economic, that is, do not involve personal injury or property damage.  The court reasoned that tort law is not intended to compensate parties for monetary loses suffered as a result of duties which are owed to them simply as a result of a contract.'  
Nepomoceno v. Knights of Columbus
, No. 96 C 4789, slip op. at ___ (N.D. Ill. February 8, 1999).  However, negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in business transactions is an exception to the 
Moorman
 doctrine.  
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 199 (1997).  Further, businesses that provide informational services as well as a product may be considered a business that supplies information.  See 
Nepomoceno
, slip op. at ___."  
Tolan & Son, Inc. v. KLLM Architects, Inc.
, 308 Ill. App. 3d 18, 24 (1999).

"To state a claim based on the negligent misrepresentation exception to 
Moorman
, plaintiff must demonstrate that:  (1) defendant is in the business of supplying information for the guidance of others in their business dealings;  (2) defendant provided information that constitutes a misrepresentation;  and (3) defendant supplied the information for guidance in the plaintiff's business dealings. [Citation.]  In determining whether a particular enterprise is in the business of supplying information for the guidance of others in their business transactions, courts must undertake a 'precise, case-specific inquiry.'  
Rankow v. First Chicago Corp.
, 870 F.2d 356, 361 (7th Cir. 1989).  See also 
Rosenstein v. Standard & Poor's Corp.
, 264 Ill. App. 3d 818, 823 (1993); 
General Electric Capital, Corp. v. Equifax Services, Inc.
, 797 F. Supp. 1432, 1442 (N.D. Ill. 1992).  The determination is dependent 'upon the nature of the information at issue *** and its relation to the kind of business being conducted.'  
Rankow
, 870 F.2d at 361.  An allegation that defendant is in the business of providing information for the guidance of others is a legal conclusion that plaintiff must support with well-pleaded factual allegations. [Citation.]"  
Tolan
, 308 Ill. App. 3d at 27-28.

"'The Illinois Supreme Court's test for determining whether a defendant "is in the business of supplying information for the guidance of others in their business transactions" is whether the end product of the relationship between plaintiff is a tangible object (
i.e.
, a product) which could be readily described in a contract or whether it is intangible.  [Citation.]  In short, if the intended end result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, then the defendant will not fit into the "business of supplying information" negligent misrepresentation exception.' [Citation.]"  
Tolan
, 308 Ill. App. 3d at 28.

Here, the appellants complaint failed to plead a cause of action for negligent misrepresentation.  This action is barred by the 
Moorman
 doctrine because Ben Franklin was not in the business of supplying information, and, as such, its directors were not either.  Ben Franklin was a retail store.  It provided wares for people to purchase, not financial information.  Also, Brainard and Kendig were not in the business of supplying information but,  instead, were in the business of running Ben Franklin.

IV

Count V Alleging Consumer Fraud

The appellants maintain their fourth amended complaint sufficiently pleads a cause of action for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

"The elements of a claim under the Illinois Consumer Fraud [and Deceptive Business Practices] Act (815 ILCS 505/2 (West 1994)) are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce.  
Siegel v. Levy Organization Development Co.
, 153 Ill. 2d 534, 542 (1992).  Plaintiff's reliance is not an element of statutory consumer fraud [citation], but a valid claim must show that the consumer fraud proximately caused plaintiff's injury [citation.]  Furthermore, a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud.  
People ex rel. Hartigan v. E&E Hauling, Inc.
, 153 Ill.2d 473, 492 (1992)."  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 501 (1996).

The appellants cannot establish that they are consumers as that term is defined under the Illinois Consumer Fraud and Deceptive Business Practices Act (the Act) 815 ILCS 505/1 
et
 
seq
. (West 1998).  Under the Act, a consumer is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."

Prime, as the lessor, sold its services to Ben Franklin; it was not a consumer and, as such, cannot be granted relief under the Act.  Wechsler is a stock brokerage firm and market maker and subsequently purchased Ben Franklin stocks in the ordinary course of its business.  Since Wechsler bought Ben Franklin stocks or bonds in the ordinary course of business, it was not a consumer as defined by the Act.

Also, even if Wechsler were to be considered a consumer, the Act normally does not apply to out-of-state consumers.  See 
Oliveira v. Amoco Oil Co.
, 311 Ill. App. 3d 886, 897 (2000), rev'd. on other grounds, Nos. 89497, 89511 cons., June 20, 2002, slip op.

V

Count VI Alleging Breach of Fiduciary Duty

The appellants assert their fourth amended complaint sufficiently pleads a cause of action for breach of fiduciary duty.

"[I]n order to state a claim for breach of fiduciary duty, it must be alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains.  
Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33, 53 (1994); see also 
Chicago City Bank & Trust Co. v. Lesman
, 186 Ill. App. 3d 697, 701 (1989) ('[a] cause of action for breach of fiduciary duty must set forth *** that a fiduciary relationship existed between the parties, that the trustee owed certain, specific duties to the plaintiff, that the trustee breached those duties, and that there were resulting damages')."  
Neade v. Portes
, 193 Ill. 2d 433, 444 (2000).

"A fiduciary duty may arise as a matter of law from the existence of a particular relationship, such as an attorney-client or principal-agent relationship.  
Ransom v. A.B. Dick Co.
, 289 Ill. App. 3d 663, 672, 682 N.E.2d 314 (1997).  A fiduciary relationship and the attendant duties may also arise as the result of special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former.  
Ransom
, 289 Ill. App. 3d at 672.  When the relationship between the parties is not one that gives rise to a fiduciary relationship as a matter of law, the party asserting the existence of the relationship has the burden of establishing such by clear and convincing evidence.  
Ransom
, 289 Ill. App. 3d at 672.  The relevant factors in determining whether a fiduciary relationship exists include: the degree of kinship between the parties; the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the 'servient' party entrusted the handling of its business affairs to the 'dominant party' and placed trust and confidence in it.  
Ransom
, 289 Ill. App. 3d at 673."  
Gonzalzles v. American Express Credit Corp.
, 315 Ill. App. 3d 199, 210 (2000).

The general rule is that directors do not owe creditors duties beyond the relevant contractual terms.  However, in special circumstances, e.g., fraud, insolvency, or a violation of a statute, directors do owe a duty.  
Geyer v. Ingersoll Publications Co.
, 621 A.2d 784, 787 (Del. Ch. 1992).
(footnote: 1)
 While the parties are in agreement that the special-circumstance exception exists, they disagree as to the scope and extent of the exception.

The plaintiffs contend that they have adequately stated such a case in count VI.

The Directors argue that they should prevail because (1) plaintiffs do not have standing to bring breach of fiduciary duty claims, (2) the special-circumstance fiduciary claim is limited to self dealing and fraudulent transfers, and (3)there was a case pending for the same cause of action involving the same parties brought by the bankruptcy trustee.

The special-circumstance fiduciary duty runs to all creditors as a group, and not to any individual creditor.  It includes creditors in the entire corporate constituency to which a duty is owed.  The plaintiffs have cited 
Koch Refining v. Farmers Union Central Exchange Inc.
, 831 F.2d 1339 (7th Cir. 1987), which recognizes that creditors generally have standing, post-bankruptcy, to raise personal claims, but nothing in that case suggests that special-circumstance fiduciary duty claims are personal to an individual creditor.  Because the special- circumstance fiduciary duty is owed to the entire corporate constituency, only the corporation or its representative in bankruptcy can maintain a claim for an alleged breach of this duty.  See, 
e.g.
, 
Koch
, 831 F.2d at 1348-49 (trustee, not individual creditors, has standing to bring claims arising on behalf of all creditors).
(footnote: 2)
 Because the bankruptcy trustee's claim was pending, the trial court below was correct in dismissing these claims of the plaintiff pursuant to section 2-619 (735 ILCS 5/2-619 (West 2000)).

However, it should also be noted that, as the court in 
Geyer
 explained, this special-circumstance fiduciary duty is, at heart, an antipreference rule, which holds directors liable for preferring one group (shareholders, creditors or employees) unfairly over another.  
Geyer
, 
621 A.2d at 669.

Plaintiffs did not allege that the Directors were involved in any self dealing or preferential transfers or that they acted in bad faith.  As a result, plaintiffs failed to state a cause of action even if they had standing and no similar case was pending.

Likewise, plaintiffs have alleged conduct on the part of the defendant Directors that predated plaintiffs' status as creditors of the corporation and this special-circumstance duty does not seem to apply to "soon to be" creditors as such.

The appellants have failed to sufficiently plead a cause of action for breach of fiduciary duty.  In sum, the special-circumstance fiduciary duty does not create a personal right of action for these two plaintiffs under these circumstances.   

CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

Campbell, P.J. and Quinn, J., concur.

FOOTNOTES
1:
Pursuant to Illinois choice-of-law principles, the fiduciary duty claims are governed by the law of the state of incorporation.  Ben Franklin was incorporated in Delaware.  Therefore, Delaware law thus applies.  
Libco Corp. v. Roland
, 99 Ill. App. 3d 1140 (1981).

2:
Ben Franklin's trustee in bankruptcy brought such a claim on behalf of all creditors.  See 
In re Ben Franklin Retail Stores, Inc.
, 225 B.R. 646, 653-56 (N.D. Ill. 1998), 
aff'd in relevant
 
part
, No. 97 C 7934, 97 C 6043 (2000).