**HOME REPAIR, INC., a Delaware corporation, Plaintiff–Appellant,**

v.

**UNIVERSAL RESTORATION SERVICES, INC., an Illinois corporation, Defendant–Appellee.**

No. 03–2342.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 2003.

Decided Dec. 9, 2003.

Carmen D. Caruso, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for Plaintiff–Appellant.

Neil Holmen, Winston & Strawn, Chicago, IL, for Defendant–Appellee.

Before POSNER, EASTERBROOK, and EVANS, Circuit Judges.

## ORDER

Universal Restoration Services, Inc. and Home Repair, Inc. were franchisees of Paul W. Davis Systems, Inc. (PWDS). Universal agreed to sell its franchise territories to Home Repair. In order to complete the transaction, however, the companies needed PWDS's approval, which PWDS did not give. Consequently, Universal never made the sale. Subsequently, Home Repair brought suit against Universal for breach of contract and fraud. The district court granted Universal's 12(b)(6) motion to dismiss, and Home Repair has appealed.

When reviewing a 12(b)(6) dismissal, all well-pleaded allegations in the complaint are deemed true and all inferences are drawn in favor of the nonmoving party. Now to the facts. In 1997, Universal no longer wanted to be a PWDS franchise, desiring instead to go off on its own as an independent business. This proved to be easier said than done. As part of its franchise agreement with PWDS, Universal was prevented from competing with PWDS franchises. Universal sought to be released from its noncompete obligations, but negotiations between the two companies failed. Universal then approached Home Repair and offered to sell its franchise territory, with the understanding that Universal would remain a competitor. Home Repair was to pay substantially less than fair market value for the territories, in exchange for Home Repair's promise not to enforce PWDS's noncompetition provisions against Universal. Their arrangement was memorialized in a letter agreement.

There were two express conditions, however, before the transaction was to be finalized. The parties needed to execute a final purchase agreement and PWDS had to approve the sale. The agreement stated:

3. *Conditions.* The Transaction is conditional upon satisfactory completion of the following:

(A) *Purchase Agreement.* Execution of a mutually acceptable purchase agreement embodying the terms of this letter ("Purchase Agreement").

(B) *Approval.* Receipt of all approvals and consents from third parties which are necessary to consummate the transaction contemplated herein, including but not limited to the consent of Paul W. Davis Systems, Inc. ("the Franchisor") and the waiver by the Franchisor of its

rights of first refusal pursuant to Section 20.2 of the Franchise Agreements. Universal submitted the letter agreement to PWDS, which rejected it "in its present form" based upon the fact that Universal would remain a competitor. The letter PWDS sent to Universal concluded, however, that "if you elect to modify your transaction so that [Universal] will not engage in the insurance restoration business, PWDS, will, of course, reconsider your request for consent at that time."

After PWDS withheld its consent, Universal took no further action with regard to the proposed deal with Home Repair. Universal did not advise Home Repair of PWDS's letter or make any additional attempt to obtain PWDS's approval. Universal, moreover, resumed negotiations with PWDS solely on its own behalf, seeking a release from its noncompete obligations.

Shortly thereafter, Universal and PWDS reached a tentative written agreement for PWDS to reclaim Universal's franchises and excuse Universal from the noncompete clause. Universal did not inform Home Repair that it had reached this agreement. Instead, Philip Goldstein, principal owner of Universal, sent Home Repair a letter stating that he was "continuing his efforts to negotiate with [PWDS] and will keep you posted."

Home Repair demanded that Universal close the sale to which both parties had agreed. Universal refused and continued negotiating with PWDS to obtain a release from the noncompete clause. The tentative agreement between PWDS and Universal collapsed, however, and Universal filed suit against PWDS. A court ordered Universal to arbitrate its claims against PWDS in accordance with the franchise agreement. *Paul Davis Sys. of N. Ill. Inc. v. Paul W. Davis Sys., Inc.,* 1998 WL 749041 (N.D.Ill. Oct.15, 1998).

Home Repair then filed the instant suit for breach of contract based on the covenant of good faith and fair dealing, alleging that Universal should have taken additional steps to obtain PWDS's approval. It also alleged that Universal fraudulently represented it was seeking PWDS's consent when in fact it was not. The district court granted Universal's 12(b)(6) motion to dismiss based on the fact that since condition precedents weren't met, there was no binding contract, and thus Universal breached no duty to Home Repair. The court also found there was no fraud.

■ This is a diversity case applying Illinois law. Under Illinois law, to recover for breach of contract based on the implied covenant of good faith and fair dealing there must be an enforceable contract. The covenant of good faith and fair dealing is not an independent source of duties for parties to a contract, but instead an implied term that "guides the construction of explicit terms in an agreement." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir.1992) (citing Illinois cases). Here, because two condition precedents were admittedly not met, there was no enforceable contract.

To begin, the letter agreement requires "execution of a mutually acceptable purchase agreement embodying the terms of this letter," which was never done. *See Quake Constr. Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 287, 152 Ill.Dec. 308, 565 N.E.2d 990 (1990) (Where the "parties construe the execution of a formal agreement as a condition precedent, then no contract arises unless and until that formal agreement is executed."); *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.*, 137 Ill. App.3d 550, 559, 92 Ill.Dec. 323, 484 N.E.2d 1178 (1st Dist.1985) (Where "the later execution of a formal agreement is a condition precedent to the formation of a binding contract, no prior writing will cre-

ate an effective contract."). Second, PWDS's refusal to approve the letter agreement resulted in the failure to satisfy another express condition of the agreement. No evidence suggests that Universal submitted the agreement to PWDS in bad faith, *see Huang v. BP Amoco Corp.*, 271 F.3d 560 (3rd Cir.2001) ( [W]here an agreement requires the parties to obtain the approval of third parties, the law requires an honest, diligent effort to obtain the required approval, which is measured by the duty of good faith and fair dealing.); *Cummings v. Beaton & Assocs., Inc.*, 249 Ill.App.3d 287, 306–07, 187 Ill.Dec. 701, 618 N.E.2d 292 (1st Dist.1992) (a party cannot claim the failure of a condition where its own conduct caused the failure). Therefore, once consent was not given, the letter agreement did not require Universal to take further action, and Home Repair cannot claim that Universal breached any contract.

Recognizing that the express terms of the agreement offer it no help, Home Repair argues that implied in the letter agreement is a requirement that Universal should have "tried harder" to win PWDS's approval. Home Repair suggests that Universal should have modified the letter agreement by removing language which stated that Universal would remain a competitor. Or, Home Repair claims, Universal could have litigated the noncompete issue as a way to procure PWDS's acceptance. There is no duty, however, either in the letter agreement or the law, that required Universal to do everything possible to receive PWDS's consent. Of course, there is an almost infinite number of things Universal could have done, but under the letter agreement it had no obligation to do any of them.

Since the agreement was unambiguous, moreover, there is no need to look at extrinsic evidence to determine the parties'

intent. *Quake,* 141 Ill.2d at 288, 152 Ill. Dec. 308, 565 N.E.2d 990; *Magnus v. Lutheran Gen. Health Care Sys.,* 235 Ill. App.3d 173, 182, 176 Ill.Dec. 209, 601 N.E.2d 907 (1st Dist.1992). For example, while Home Repair alleges there was an oral agreement that Universal would litigate the noncompete issue with PWDS, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir. 1998). Here, the letter agreement contained no such requirement. Especially considering the high cost of litigation, had such an agreement been made, we certainly would expect it to have been memorialized in writing.

 Home Repair's fraud claim fares no better. In a letter sent to Home Repair, Universal stated, "As you are aware, the Franchisor has not approved the transfer. We are continuing our efforts to negotiate with them, and will keep you posted." Home Repair argues that Universal, with this letter, intentionally led it to believe that Universal was continuing to negotiate for approval of the transfer to Home Repair, when in fact the company was only negotiating for itself. The statement was, however, literally true. Universal was still negotiating with PWDS (albeit for its own benefit and not that of Home Repair). Thus, there was no fraud. *Prime Leasing v. Kending,* 332 Ill.App.3d 300, 311, 265 Ill.Dec. 722, 773 N.E.2d 84 (1st Dist.2002) (fraud requires a false statement of material fact). An omission, moreover, is not actionable as fraud unless "done with the intent to deceive, under circumstances creating an opportunity and duty to speak." *Farm Credit Bank of St. Louis v. Isringhausen,* 210 Ill.App.3d 724, 731, 155 Ill. Dec. 235, 569 N.E.2d 235 (1991). Since

there was no binding contract, Universal owed no duty of full disclosure to Home Repair. Finally, Home Repair cannot establish any detrimental reliance as a result of the letter. *Prime Leasing,* 332 Ill. App.3d at 311, 265 Ill.Dec. 722, 773 N.E.2d 84 (fraud requires reliance).

The judgment of the district court is AFFIRMED.