In re Altaf M. HUSSAIN, Debtor.

Salem Services, Inc., Plaintiff,

v.

Altaf M. Hussain, Defendant.

Bankruptcy No. 03 B 00950.
Adversary No. 03 A 01631.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 6, 2004.

Ann Addis Pantoga, Tenney & Bentley, LLC, Chicago, IL, for Plaintiff.

Terry D. Slaw, Alan H. Shifrin & Associates, LLC, Rolling Meadow, IL, for Defendant.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint filed by Salem Services, Inc. (the "Creditor") against the Debtor, Altaf M. Hussain (the "Debtor"), to determine whether the claim asserted by the Creditor against the Debtor should be held nondischargeable under 11 U.S.C. § 523(a)(4) for a defalcation while acting in a fiduciary capacity. For the reasons set forth herein, the Court holds that the debt is dischargeable, and that the Debtor did not commit defalcation for purposes of § 523(a)(4).

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

The Creditor is an employment agency which furnishes qualified personnel on a

per project basis for either temporary or permanent job placement. In May 2001, the Creditor contracted with National Computer Learning Institute, Inc. ("NCLI"), through one of its shareholders, Nazeer Khan ("Khan"), for the Creditor to provide NCLI with instructors to teach courses offered by NCLI. NCLI was in the business of offering computer training classes. NCLI failed to pay the Creditor as agreed. Subsequently, the Creditor sued NCLI and obtained a judgment against it in the sum of $14,002.75.

The Debtor was the chief executive officer, president, fifty percent shareholder, and director of NCLI. The Debtor testified that he and Khan started NCLI in 1996 and offered classes in subsequent years through 2001. The Debtor was responsible for the course curricula, overseeing the classes and training the students. According to the Debtor, although he shared office space with Khan, Khan was solely in charge of NCLI's finances. In 2001, NCLI's revenues were reduced because of fewer students attending classes. The Debtor became involved in the negotiations to restructure the bank debt NCLI owed. NCLI's last class ended in September or October 2001.

The Debtor reviewed NCLI's financial records to prepare the annual corporate report that he signed, but NCLI had an outside accountant prepare its quarterly financial reports, which were submitted to Khan. The Debtor recalls reviewing the second quarterly report after June 2001. He oversaw services of some of the out of state licensees of NCLI, and had personally guaranteed some of its bank debt According to the Debtor, however, he was not involved in any of the day-to-day financial operations of NCLI.

There was no evidence of the Debtor's involvement in the relationship between the Creditor and NCLI until the Creditor refused to send its instructors for further work, and the Debtor placed a telephone voice-mail message to the Creditor on August 28, 2001. See Plaintiff's Ex. No. 22. The Debtor requested the Creditor to resume sending the instructors and stated that he would pay the Creditor for the services, but the Creditor refused.

The Debtor testified that he did not review the underlying contract with the Creditor, nor was he familiar with its terms. He did not review any of the Creditor's employees' time sheets or invoices until after August 2001. The Debtor testified that he first learned that the Creditor's account was in arrears in July 2001, but he did not realize how serious the problem was at that point in time. Several invoices for unpaid services of the Creditor's instructors were sent to Khan, not the Debtor. According to the Debtor, Khan never talked to him about the unpaid bills owed to the Creditor.

The Debtor testified that he did not take a salary or any other compensation during the year 2001 because of NCLI's declining financial condition. To the contrary, the Debtor testified that he personally advanced some of NCLI's corporate expenses in an attempt to restructure the company. The evidence showed that the Debtor paid a number of NCLI's employees out of his own funds and advanced payments to other venders on behalf of NCLI.

The Debtor filed his voluntary Chapter 7 petition on January 8, 2003. Thereafter, the Creditor filed the instant adversary proceeding and the trial was held on March 19, 2004.

## III. DISCUSSION

### A. Whether the Creditor Has Standing to Pursue this Cause of Action

The Debtor contends that under Illinois law the Creditor does not have

standing to bring this action because the special-circumstance fiduciary duty is owed to the entire corporate constituency and only the corporation or its representative in bankruptcy can maintain a claim for an alleged breach of this duty.[1] The Debtor concludes that awarding a judgment in favor of a single creditor would violate the rule against preferences under Illinois law.

■ The Court rejects the Debtor's argument that the Creditor lacks standing to pursue this action against the Debtor. First, § 523(a) of the Bankruptcy Code affords statutory standing to any creditor who asserts a claim against a debtor that should survive the debtor's discharge for one or more of the applicable statutory grounds. Further, Federal Rule of Bankruptcy Procedure 4007(a) clearly states that "[a] debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt." Fed. R. Bankr.P. 4007(a). Indeed, the Seventh Circuit Court of Appeals stated in *Koch Refining v. Farmers Union Cen. Exch. Inc.*, 831 F.2d 1339 (7th Cir.1987) that "[a bankruptcy trustee] has no standing to bring *personal* claims of creditors. A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause." *Id.* at 1348 (emphasis in original). Indeed, this cause of action is a "personal" claim of the Creditor. The Creditor has suffered an economic loss of over $14,000.00, which was reduced to judgment, and no other claimant or creditor has an interest in that cause of action. Hence, the Court finds that the Creditor has standing to pursue this action.

## B. Standards for Dischargeability in the Seventh Circuit

■ The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Harasymiw*, 895 F.2d 1170, 1172 (7th Cir.1990); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *See also In re McFarland*, 84 F.3d 943, 946 (7th Cir.), *cert. denied*, 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Scarlata*, 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985)). *Accord In re Morris*, 223 F.3d 548, 552 (7th Cir.2000); *In re Reines*, 142 F.3d 970, 972–73 (7th Cir.1998), *cert. denied*, 525 U.S. 1068, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999).

## C. 11 U.S.C. § 523(a)(4)

■ Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embez-

---

1. Under Illinois law, generally, directors do not owe creditors duties beyond the relevant contractual terms. *Prime Leasing, Inc. v. Kendig*, 332 Ill.App.3d 300, 314, 265 Ill.Dec. 722, 773 N.E.2d 84, 96 (1st Dist.2002). "However, in special circumstances, e.g., fraud, insolvency, or a violation of a statute, directors do owe a duty." *Id.* (citation omit-

ted). Illinois law states that this special-circumstances fiduciary duty is an anti-preference rule, which holds directors liable for preferring one group (shareholders, creditors or employees) unfairly over another. 332 Ill. App.3d at 315, 265 Ill.Dec. 722, 773 N.E.2d at 97 (citation omitted).

zlement, or larceny." 11 U.S.C. § 523(a)(4). In order for the Creditor to prevail under § 523(a)(4), it must prove that the Debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. The Creditor does not allege that the Debtor's actions constituted embezzlement or larceny. Moreover, the Creditor does not argue the alternative fraud theory under the first prong of § 523(a)(4).

 To establish that a debt is nondischargeable for reason of defalcation while acting in a fiduciary capacity, the Creditor must establish, by a preponderance of the evidence, the existence of an express trust or fiduciary relation, and a debt caused by the Debtor's defalcation while acting as a fiduciary. *Grogan*, 498 U.S. at 291, 111 S.Ct. 654; *In re Woldman*, 92 F.3d 546, 547 (7th Cir.1996). A threshold inquiry is whether a fiduciary obligation runs from the Debtor to the Creditor under the facts of this matter. Whether a debtor was acting in a fiduciary capacity for purposes of § 523(a)(4) is a question of federal law. *In re Bennett*, 989 F.2d 779, 784 (5th Cir.), *cert. denied*, 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993).

### 1. *Fiduciary Duty*

 The first requirement for application of § 523(a)(4) is that a "fiduciary" relationship exists. To qualify under § 523(a)(4), a fiduciary relation must have an existence independent of a debtor's wrongdoing. *In re Marchiando*, 13 F.3d 1111, 1115–16 (7th Cir.), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). The hallmark of such a relationship is a:

> difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter. The fiduciary may

know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary.... These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

*Id.* at 1116 (citations omitted). Under Illinois law, a number of relationships can constitute fiduciary relationships: attorney and client, *Marchiando*, 13 F.3d at 1115; joint venturers or partners, *Woldman*, 92 F.3d at 547; corporate directors and shareholders, *Marchiando*, 13 F.3d at 1115; and trustee and beneficiary under an express trust. *Id.*

 Illinois law has "long recognized that corporate officers and directors occupy a fiduciary relationship towards their corporation and shareholders...." *Brown v. Tenney*, 125 Ill.2d 348, 360, 126 Ill.Dec. 545, 532 N.E.2d 230, 235 (1988). "But, 'so long as a corporation remains solvent, its directors ... owe no duties or obligations to others.'" *Technic Eng'g, Ltd. v. Basic Envirotech, Inc.*, 53 F.Supp.2d 1007, 1010 (N.D.Ill.1999) (quoting *Beach v. Miller*, 130 Ill. 162, 170, 22 N.E. 464, 466 (1889)); *see also Energy Prods. Eng'g, Inc. v. Reuscher (In re Reuscher)*, 169 B.R. 398, 402 (S.D.Ill.1994); *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 286 B.R. 54, 81 (Bankr.N.D.Ill. 2002). A corporate officer or director's duties change, however, if the corporation becomes insolvent. *Technic Eng'g*, 53 F.Supp.2d at 1011. "[D]irectors ... occupy a fiduciary relation towards the creditors when the corporation becomes insolvent." *Atwater v. Am. Exch. Nat'l Bank of Chicago*, 152 Ill. 605, 613, 38 N.E. 1017, 1022 (1893). "When a corporation becomes insolvent, its assets are regarded as

a trust fund for the payment of its creditors; and the directors, who are the agents or trustees of the stockholders during the solvency of the corporation, occupy a fiduciary relation towards the creditors when the corporation becomes insolvent." *Id.*

▮▮▮ NCLI's corporate records indicate that it became balance sheet insolvent in 2000. *See* Debtor's Ex. No. 8, p. 5. NCLI's total equity went from $18,702.40 as of December 31, 1999 to a deficit of $45,572.64 as of December 31, 2000. That deficit further increased to $250,260.52 by December 31, 2001. *Id.* Accordingly, the Court finds that the preponderance of the documentary evidence establishes that at the time of the services provided by the Creditor to NCLI, NCLI was insolvent. Therefore, the Debtor, as an officer and director of NCLI, occupied a fiduciary relationship towards NCLI's creditors, which includes the Creditor at bar.

### 2. *Defalcation*

▮▮▮ Next, the Creditor must establish that the Debtor's actions amounted to a defalcation. According to the Creditor, the Debtor's reckless disregard of managing or failing to manage NCLI's assets by allowing NCLI to pay one of its shareholders, Khan, but not servicing its debt, amounted to a defalcation. "Defalcation" is not a defined term in the Bankruptcy Code. One court has defined defalcation within the context of § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois),* 201 B.R. 501, 506 (Bankr.N.D.Ill. 1996) (citation omitted); *see also Blackhawk B.M.X., Inc. v. Anderson (In re Anderson),* 64 B.R. 331, 334 (Bankr. N.D.Ill.1986); *In re Lewis,* 97 F.3d 1182, 1186 (9th Cir.1996) (citations omitted). An objective standard is used to determine a defalcation, and intent or bad faith is not required. *See Green v. Pawlinski (In re Pawlinski),* 170 B.R. 380, 389 (Bankr. N.D.Ill.1994) (citations omitted). The Seventh Circuit has adopted the position, like the Fifth and Sixth Circuits, that mere negligence does not constitute defalcation. *Meyer v. Rigdon,* 36 F.3d 1375, 1382–85 (7th Cir.1994) (construing "defalcation" under § 523(a)(4) and § 523(a)(11)); *In re Johnson,* 691 F.2d 249, 255–57 (6th Cir. 1982) (defalcation requires no intent but cannot rest on mere negligence); *In re Moreno,* 892 F.2d 417, 421 (5th Cir.1990) (defalcation is "willful neglect of duty, even if not accompanied by a fraud"). The Seventh Circuit has not clearly defined the level of tortious conduct necessary to constitute a defalcation in the context of § 523(a)(4); it has only required something more than a negligent breach of a fiduciary duty. *Meyer,* 36 F.3d at 1385. Something more than mere negligence or mistake, but less than fraud, is required. *Kress v. Kusmierek (In re Kusmierek),* 224 B.R. 651, 656–57 (Bankr.N.D.Ill.1998). Hence, some degree of culpability is required to make a debt non-dischargeable as a defalcation under § 523(a)(4). *See Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 511–12 (2d Cir.1937). A debtor's knowledge is relevant. *See Chase Lumber & Fuel Co. v. Koch (In re Koch),* 197 B.R. 654, 658 (Bankr.W.D.Wis. 1996).

▮▮▮ The Court finds that the Creditor has not demonstrated by a preponderance of the evidence that the Debtor's actions or omissions constituted defalcation. The Debtor was not involved in the establishment of the contractual relationship between the Creditor and NCLI, nor was he in charge of NCLI's finances. At worse, the Debtor's actions in allowing Khan to control NCLI's financial operations might be deemed negligence on his part with

respect to NCLI's creditors. Indeed, there was no evidence that the Debtor ever improperly used NCLI's assets during the relevant period for his own purposes. To the contrary, the Debtor advanced some of his personal funds to keep NCLI's operations afloat while he attempted to restructure NCLI. His offer to personally pay the Creditor's bill owed by NCLI, evidenced in the voice-mail message (Plaintiff's Ex. No. 22), was conditioned on the Creditor's continued furnishing of its instructors. The Creditor understandably declined to extend further services without first receiving payment of its overdue debt. The Creditor cannot contend that it detrimentally relied on this initial contact with the Debtor or that it suffered any additional loss or damage than what had already been caused by NCLI's failure to pay the debt incurred through Khan's actions. The Debtor did not act on behalf of NCLI to hire the employees of the Creditor, nor did he agree to guarantee payment of the unpaid bills owed the Creditor by NCLI, unless it resumed providing the instructors. There is no causal connection or nexus between the damage suffered by the Creditor and any act or omission on the part of the Debtor that caused the damage. In short, the Debtor's actions and omissions on these facts simply do not rise to the level of defalcation for purposes of § 523(a)(4).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the debt owed by the Debtor to the Creditor is dischargeable, and that the Debtor's actions did not amount to defalcation under § 523(a)(4).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.