In re Daren Scott **BERG**, Debtor.

**Torrington Livestock Cattle Company, Plaintiff Counter–Defendant–Appellee,**

v.

**Daren Scott Berg, Defendant–Counter–Claimant–Appellant.**

**BAP No. WY–09–047.**
**Bankruptcy No. 08–20184.**
**Adversary No. 08–02020.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Feb. 16, 2010.

672

Submitted on the briefs: * Frank J. Jones, Wheatland, Wyoming, for Plaintiff–Counter–Defendant–Appellee.

Paul Hunter, Cheyenne, Wyoming, for Defendant–Counter–Claimant–Appellant.

Before RASURE, KARLIN, and ROMERO, Bankruptcy Judges.

OPINION

RASURE, Bankruptcy Judge.

Appellant Daren Scott Berg ("Berg"), an individual Chapter 11 debtor, appeals the bankruptcy court's judgment denying his discharge under 11 U.S.C. § 727(a)(3).[1] Because a Chapter 11 debtor's discharge is governed by § 1141(d), and the bankruptcy court failed to make findings on two of the three elements required to deny Berg's discharge under § 1141(d)(3), we REVERSE the judgment and REMAND this matter to the bankruptcy court.

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Unless otherwise specified, all references to "section" or " § " refer to the Bankruptcy Code, Title 11 of the United States Code.

## I. BACKGROUND

On April 2, 2008, Berg filed a petition seeking to reorganize his personal financial affairs under Chapter 11 of the Bankruptcy Code. Appellee Torrington Livestock Cattle Company ("Torrington") filed its Complaint Objecting to Discharge of Debt on July 30, 2008, asserting that Berg was not entitled to discharge his debt to Torrington pursuant to § 1141(d)(2) and § 523(a)(2) and (a)(4), and was not entitled to discharge any debts pursuant to § 1141(d)(3) and § 727(a)(2)-(5) and (a)(7).[2]

Approximately one year prior to the petition date, Torrington had given Berg the authority to write drafts on its bank account to purchase cattle, with the understanding that Berg would repay Torrington the amount advanced plus a commission when Berg disposed of the cattle. Torrington alleged, *inter alia,* that Berg (1) used funds advanced by Torrington to purchase vehicles and equipment for his own business and personal use, and used Torrington funds for personal living expenses; (2) failed to sell the cattle purchased with Torrington funds as live cattle, but, contrary to their understanding, put them on feedlots or slaughtered them and sold them as boxed meat; (3) failed to repay the advances from the funds Berg obtained when the cattle were sold; (4) co-mingled funds advanced by Torrington with personal funds, and co-mingled proceeds of cattle purchased with Torrington funds with proceeds of cattle purchased with other lenders' funds; (5) failed to maintain adequate books and records that would allow Torrington to determine how Berg applied its funds; (6) made misrepresentations to Torrington's agents when Torrington discovered that it

was not being repaid; and (7) opened a new bank account in order to hide assets from Torrington.

Torrington claimed a loss in excess of $500,000, and asserted that its loss arose from actual fraud, conversion, embezzlement, and fraud by a fiduciary, and therefore was not dischargeable. Torrington further contended that Berg's concealment, falsification or failure to keep adequate books and records precluded all creditors from examining Berg's prepetition transactions and ascertaining his overall financial condition, and therefore Berg was not entitled to a discharge of any debts.

Berg argued that in his transactions with Torrington, he was acting on behalf of 4B Livestock, Inc., sometimes doing business as 4B Meats, a business entity he owned with his non-debtor wife. Accordingly, Berg insisted that Torrington's claims were not viable against Berg as an individual Chapter 11 debtor. In addition, Berg denied that he defrauded Torrington, or that he had held trust funds on behalf of Torrington, and he alleged that Torrington's losses were largely caused by Torrington's interference with 4B Livestock Inc.'s business.

The bankruptcy court held a three day trial on the merits of Torrington's complaint. Thereafter Torrington filed a motion to amend the pleadings to conform to the evidence, requesting the bankruptcy court to "pierce the corporate veil" to determine that the acts and transactions Berg attributed to 4B Livestock, Inc., sometimes doing business as 4B Meats, were the acts of Berg personally.[3] Berg

---

**2.** *Complaint* at 1–2, ¶ 3, *in* Amended Appellant's Appendix ("App.") at 1–2.

**3.** *Plaintiff's Motion to Amend the Pleadings to Conform to the Evidence to Allege a Cause of Action to Pierce the Corporate Veil, in* App. at 80–90.

did not file an objection to the motion, and the motion was granted.

On July 1, 2009, the bankruptcy court entered a judgment in the adversary proceeding denying Berg's discharge pursuant to § 727(a)(3) (the "Judgment").[4] The Bankruptcy Court Clerk separately docketed the Judgment in Berg's bankruptcy case and mailed the Judgment to all parties in interest.[5] In its Opinion on Objection to Discharge of Debt (the "Opinion") filed contemporaneously with the Judgment,[6] the bankruptcy court made detailed findings of fact, including that Berg failed to maintain business records sufficient to allow the court to determine Berg's financial condition or the propriety of Berg's prepetition financial transactions, and that Berg failed to justify the lack of adequate records. The bankruptcy court further concluded that "[b]ecause the Court finds that Debtor's discharge should be denied under § 727(a)(3), the Court need not consider whether denial of discharge is warranted under the other provisions raised by [Torrington]."[7]

On July 10, 2009, Berg filed a motion to alter or amend the Judgment ("Motion to Amend Judgment").[8] Berg argued that in order to deny Berg's discharge under § 1141(d)(3), the bankruptcy court was required to find not only that Berg would be ineligible for a discharge under § 727 if he had filed a case under Chapter 7, but two other elements as well—namely, that Berg's Chapter 11 plan provided for the liquidation of all or substantially all property of the estate and that Berg would not be engaging in business after consummation of the plan.[9] On August 11, 2009, the bankruptcy court denied the Motion to Amend Judgment.[10] In its order, the bankruptcy court explained that it "did not consider the denial of the Debtor's discharge under § 1141(d)(3) at this time, as it is premature until the Debtor files a plan."[11]

On August 13, 2009, in light of the apparent conflict between the entry of the Judgment denying Berg's discharge under § 727(a)(3) and the bankruptcy court's subsequent order indicating that it was premature to consider whether to deny Berg's discharge under § 1141(d)(3), Berg filed a motion for clarification, seeking guidance from the bankruptcy court regarding whether the Judgment was intended to be considered a final appealable

---

4. *Judgment, in* App. at 110.

5. *Main Bankruptcy Case Docket Nos.* 85, 86.

6. *Opinion, in* App. at 96–109.

7. *Id.* at 14, *in* App. at 109.

8. *Motion to Alter or Amend Judgment, in* App. at 111–16.

9. *Id.* at 1–2, *in* App. at 111–12. Berg also argued that the bankruptcy court denied Berg a discharge on the basis of the inadequacy of 4B Livestock Inc.'s records rather than Berg's records, and improperly substantively consolidated a non-debtor entity that had separate assets and creditors into Berg's bankruptcy estate. *Id.* at 2, ¶¶ 2, 3, *in* App. at 112.

10. In denying the Motion to Amend Judgment, the bankruptcy court stated that it did not substantively consolidate 4B Livestock, Inc. with Berg's estate, but merely found that because the financial records produced by Berg did not segregate the corporation's assets, income or expenses from Berg's personal assets, income or expenses, the court could not ascertain Berg's individual financial condition. *Order on Motion to Alter or Amend Judgment* at 2, *in* App. at 120–21.

11. *Id.* at 1–2, *in* App. at 120–21. In fact, Berg had filed a plan and disclosure statement on January 27, 2009, prior to the trial. The court approved the disclosure statement on July 16, 2009, and denied confirmation of the plan on November 6, 2009. *Main Bankruptcy Case Docket Nos.* 48, 49, 91, 112.

order.[12] If it was not, Berg requested that the bankruptcy court vacate the Judgment denying his discharge, so that it would be clear that the court's determination was interlocutory and Berg would not lose his right to appeal the denial of his discharge pursuant to § 727(a)(3) by failing to timely appeal the Judgment.[13] On the same day, Berg also filed a motion to extend the time to appeal.[14] The bankruptcy court did not rule on either motion before August 21, 2009, the last day Berg could timely file an appeal of the Judgment.

On August 21, 2009, Berg filed a notice of appeal of the Judgment and of the order denying the Motion to Amend Judgment.[15] On September 8, 2009, the bankruptcy court denied as moot both the motion for clarification and the motion to extend time to appeal.[16]

Berg lists seven issues on appeal, which we reduce to three essential questions: (1) Is the Judgment a final order? (2) Did the bankruptcy court err by denying Berg's Chapter 11 discharge without making findings concerning two of the three elements of § 1141(d)(3)? (3) Could evidence of insufficient recordkeeping of a related non-debtor entity be considered when determining whether to deny Berg's discharge under § 727(a)(3)?

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit unless one of the parties elects to have the district court hear the appeal.[17] Neither party elected to have this appeal heard by the United States District Court for the District of Wyoming. The parties have therefore consented to appellate review by this Court. Berg filed his notice of appeal within ten days of the bankruptcy court's order denying the Motion to Amend Judgment, and therefore the appeal was timely.[18]

### A. Finality

■ Resolution of Berg's first issue on appeal is required to determine whether this Court has jurisdiction over this appeal. If the Judgment is not a final order, this Court cannot assume jurisdiction to review the merits of the Judgment. We hold that the Judgment denying Berg's discharge under § 727(a)(3) is the final order that fully adjudicated Torrington's complaint and resulted in a Judgment denying Berg's discharge. A three day trial on the merits was held to determine whether Torrington's debt should be excepted from discharge under § 1141(d)(2) and § 523(a)(2) or (a)(4), and whether discharge of all Berg's debts should be denied under § 1141(a)(3) and § 727(a)(2)-(5) or § 727(a)(7). In its Opinion, the bankruptcy court found grounds to deny discharge of all Berg's debts under § 727(a)(3), and declined to consider whether Berg's discharge could be denied on other grounds

---

**12.** *Motion for Clarification, in* App. at 122–23.

**13.** *Id.* at 2, *in* App. at 123.

**14.** *Motion to Extend Time for Appeal, in* App. at 124–25.

**15.** *Notice of Appeal, in* App. at 127–28.

**16.** *Order Denying Motion for Clarification, in* App. at 133; *Order Denying Motion to Extend Time for Appeal, in* App. at 134. On September 18, 2009, Berg amended his notice of appeal in order to also appeal the order denying the motion for clarification. *Amended Notice of Appeal, in* App. at 135–36.

**17.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

**18.** Fed. R. Bankr.P.8002(b) (2009) (amended Dec. 1, 2009).

asserted by Torrington.[19] Essentially, the bankruptcy court concluded that Torrington's other causes of action were rendered moot because Torrington obtained all the relief it requested—that its debt not be discharged-with its successful resolution of the § 727(a)(3) claim.

Based on the Opinion, the court entered the Judgment which plainly states "Debtor's discharge is denied under 11 U.S.C. § 727(a)(3)."[20] The Judgment was separately docketed in the bankruptcy case and mailed to all parties in interest pursuant to Bankruptcy Rule 4006. Although the bankruptcy court later explained that it did not consider whether the discharge could be denied under § 1141(d)(3) because it believed that claim to be premature, it did not leave the door open for further proceedings on the discharge issue. The bankruptcy court did not vacate the Judgment when Berg requested clarification of the court's intent, which indicates that the court considered it a final order. We conclude that the Judgment was intended to, and thus did, "[end] the litigation on the merits and [left] nothing for the court to do but execute the judgment,"[21] and is therefore a final appealable order.

## III. STANDARD OF REVIEW

Whether a Chapter 11 debtor's discharge may be denied based solely on a finding that the debtor would have been denied a Chapter 7 discharge under § 727 is an issue of law that is reviewed *de novo*.[22] Whether evidence of insufficient record keeping of a related non-debtor entity may be considered when determining whether discharge should be denied under § 727(a)(3) is also an issue of law and is reviewed *de novo*.

## IV. DISCUSSION

Berg is an individual Chapter 11 debtor seeking a Chapter 11 discharge. Chapter 11 discharges are governed by § 1141(d).[23] Section 1141(d)(5) provides that in the case of an individual Chapter 11 debtor, the bankruptcy court generally may not enter an order discharging debts until the debtor has completed all payments required under a confirmed Chapter 11 plan.[24] Section 1141(d)(2) provides that a Chapter 11 discharge does not discharge an individual Chapter 11 debtor from debts excepted from discharge under § 523.[25] Finally, § 1141(d)(3) provides—

The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title

---

19. *Opinion* at 14, *in* App. at 109.

20. *Judgment, in* App. at 110.

21. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

22. *See In re Gledhill,* 164 F.3d 1338, 1340 (10th Cir.1999) (if the resolution of the appeal hinges on interpretation of a statute, the issue is a matter of law that is reviewed *de novo*).

23. *See Kelly v. Giguere (In re Giguere),* 165 B.R. 531, 534 (Bankr.D.R.I.1994).

24. 11 U.S.C. § 1141(d)(5)(A).

25. 11 U.S.C. § 1141(d)(2). Debts excepted from discharge under § 523 include, but are not limited to, certain tax debts, student loans, domestic support obligations, debts to spouses and former spouses, and debts arising or resulting from fraud, defalcation by a fiduciary, embezzlement, larceny, and intentional torts.

if the case were a case under chapter 7 of this title.[26]

In this case, Torrington sought to except its debt from Berg's Chapter 11 discharge under § 1141(d)(2) by asserting that its debt was non-dischargeable under § 523(a)(2) (fraud) and § 523(a)(4) (defalcation or fraud by a fiduciary, larceny and/or embezzlement). Torrington also sought to deny Berg a discharge altogether under § 1141(d)(3) by asserting that Berg would be denied a discharge under § 727(a)(3) if Berg had filed under Chapter 7.

 Although the bankruptcy court concluded that Torrington had established the third element of § 1141(d)(3)—that Berg would not have been eligible for a Chapter 7 discharge due to inadequate record keeping—it failed to address the first and second elements—*i.e.*, whether Berg had confirmed a liquidating plan and whether Berg intended to engage in business after consummating the plan. All three elements of § 1141(d)(3) must be established before a Chapter 11 debtor's discharge may be denied.[27] A Chapter 11 discharge cannot be denied solely on the ground that the debtor would have been denied a discharge under Chapter 7.[28]

Thus, the Judgment denying Berg's discharge solely under § 727(a)(3) must be reversed.[29]

## V. CONCLUSION

Because the bankruptcy court declined to adjudicate Torrington's claims under § 1141(d)(2), believing them to be moot, and failed to make findings on two of the three elements of § 1141(d)(3), the Judgment is REVERSED and the matter REMANDED to the bankruptcy court for further adjudication of Torrington's claims consistent with this Opinion.

---

**26.** 11 U.S.C. § 1141(d)(3). Although the leading sentence of the statute implies that discharge occurs upon confirmation, § 1141(d)(5) defers the discharge of an individual Chapter 11 debtor until after the debtor has completed making payments under a plan.

**27.** *See In re T–H New Orleans Ltd. P'ship,* 116 F.3d 790, 803–04 (5th Cir.1997) ("all three requirements [of § 1141(d)(3) must] be present in order to deny the debtor a discharge"). *See also Grausz v. Sampson (In re Grausz),* 63 Fed.Appx. 647, 650 (4th Cir.2003) (lower court erred in failing to consider second element of § 1141(d)(3) before denying Chapter 11 debtor's discharge).

In the *T–H New Orleans* case, the Fifth Circuit Court of Appeals quoted legislative history that appears to express the intention that a Chapter 11 debtor that does not plan to repay creditors with post-petition earnings but rather seeks to liquidate its assets under Chapter 11 rather than under Chapter 7 should be faced with the same obstacles to discharge as a Chapter 7 debtor. 116 F.3d at 804 n. 14.

**28.** Only a Chapter 7 debtor's discharge may be denied under Section 727. *See* 11 U.S.C. § 103(b) ("[C]hapter 7 of this title appl[ies] only in a case under such chapter.").

**29.** Because we reverse and remand for further adjudication consistent with this Opinion, we decline to review the propriety of the bankruptcy court's determination of the third element of § 1141(d)(3), including whether the court could consider 4B Livestock, Inc.'s records in determining that Berg failed to keep records from which Berg's financial condition and business transactions could be ascertained.