In re Andrew A. JAHELKA, Debtor.

Wachovia Securities, LLC, n/k/a Wells Fargo Advisors, LLC, Plaintiff,

v.

Andrew A. Jahelka, Defendant.

Bankruptcy No. 09 B 20289.
Adversary No. 10 A 01.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 27, 2010.

Gary I. Blackman, Jonathan Friedland, Elizabeth B. Vandesteeg, Levenfeld Pearlstein, LLC, Chicago, IL, for plaintiff Wachovia Securities, LLC.

Mark F. Smolens, Law Office of Mark F. Smolens, Chicago, IL, for defendant Andrew A. Jahelka.

### *MEMORANDUM OPINION*

A. BENJAMIN GOLDGAR, Bankruptcy Judge.

This matter is before the court for ruling on the motion of debtor-defendant Andrew A. Jahelka ("Jahelka") to dismiss the amended complaint of plaintiff Wachovia Securities, LLC ("Wachovia") under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (made applicable by Fed. R. Bankr.P. 7009, 7012(b)). In an earlier order, the court granted Jahelka's motion to dismiss Wachovia's initial single-count complaint but also granted leave to amend. Wachovia filed an amended complaint expanding its original claim to seven counts.

For the reasons that follow, Jahelka's motion to dismiss will be granted as to the first five counts of the amended complaint with leave to amend. The remaining two counts will be dismissed on the court's own motion for lack of jurisdiction.

### 1. Facts

On a motion to dismiss under Rule 12(b)(6), the court takes as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the non-movant. *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir.2009).

Wachovia's amended complaint alleges the following facts. Jahelka was president and a shareholder of a small closely-held company called Loop Corp. ("Loop") that he co-owned with Leon Greenblatt ("Greenblatt"), and Richard Nichols ("Nichols"). On January 3, 2000, Loop obtained from Banco Panamericano ("Banco") a $9.9 million line of credit (the "Banco Loan"). The purpose of obtaining the Banco Loan was to make Loop judgment-proof, and the loan had that effect. The Banco Loan also shielded Loop from its creditors by fully encumbering Loop's assets and effectively placing Banco and Banco's majority shareholder in control of them.

On September 28, 2000, Loop opened a margin account at Wachovia. Before, during, and after the account was opened, Jahelka acted to give Wachovia the false impression that Loop was a viable company capable of covering its losses. In reality, Loop was at all times inadequately capitalized and was insolvent when it opened the Wachovia account. Loop used the Wachovia account to acquire stock in a company called "HMRI" on margin. In connection with the stock acquisition, Loop incurred substantial margin debt to Wachovia. Wachovia later obtained an NYSE arbitration award against Loop which was reduced to a judgment of $2,478,418.80. The judgment has not been paid. After Loop incurred the margin debt and after entry of the judgment, Loop transferred over $1 million in assets to its shareholders, including Jahelka.

In 2004, Wachovia filed an action in the district court against Loop and its shareholders, including Jahelka. On October 22, 2008, the district court entered a judgment piercing Loop's corporate veil and holding Jahelka liable to Wachovia.

In its opinion, the district court found, among other things, that:

● The representations of the shareholders to Wachovia created the false impression that Loop was a vital company capable of covering its losses when in fact a company insider had fully encumbered Loop's assets.

● Jahelka knew Loop was using the Wachovia account to acquire HRMI stock on margin, that Loop was inadequately capitalized and unable to function without Banco's loan, and that Loop's assets were fully encumbered as a result of the Banco loan.

● Because of Jahelka's purposeful actions, Loop was inadequately capitalized, it failed to issue stock, it failed to observe corporate formalities, it failed to pay its taxes, and it was insolvent when the Wachovia account was opened and the margin debt incurred.

● The Banco Loan was designed to shield Loop from its creditors by placing Greenblatt (who according to Wachovia was not only Banco's majority shareholder but also the majority shareholder of Loop) in control of Loop's fully encumbered assets.

● Jahelka knowingly assisted Greenblatt in his efforts to shield Loop from its creditors.

● After the margin debt came due, Jahelka and his fellow shareholders transferred to insiders and related entities more than $1 million in Loop's corporate assets, of which Jahelka received nearly $100,000.

The amended complaint has seven counts. Counts I through V allege claims

that Jahelka owes Wachovia a debt nondischargeable under section 523(a) of the Code. Specifically, Counts I through III are claims under section 523(a)(2)(A) asserting that Jahelka owes Wachovia a debt "for money, property, services, or an extension, renewal, or refinancing of credit" obtained by actual fraud, false pretenses, or false representations. Count IV is a claim under section 523(a)(4) that Jahelka owes Wachovia a debt for fraud or defalcation by a fiduciary. Count V is a claim under section 523(a)(6) that Jahelka owes Wachovia a debt for willful and malicious injury.

Counts VI and VII are objections to Jahelka's discharge under section 727(a) of the Code. Count VI alleges that Jahelka is not entitled to a discharge under section 727(a)(3) because he has failed to keep records from which his business transactions might be ascertained. Count VII is a claim under section 727(a)(5) alleging that Jahelka cannot explain satisfactorily the loss of $10,000 in assets while the bankruptcy case was pending.[1]

Jahelka now moves to dismiss the amended complaint on the ground that all seven counts are premised on fraud, and the complaint fails to allege fraud with sufficient specificity to satisfy Rule 9(b)—or, for that matter, Rule 8(a).[2]

## 2. Discussion

The gist of Wachovia's amended complaint is the same as its initial complaint:

that Jahelka and others fraudulently induced Wachovia to open the margin account for Loop by leading Wachovia to believe that Loop had the ability to cover its losses when in fact Jahelka and others had deliberately rendered Loop unable to do so through the Banco Loan. The amended complaint is essentially the same as the initial complaint, except that it (1) recites specific findings from the district court's opinion, (2) in some respects contains even less information than its predecessor, (3) teases a single claim into five separate legal theories, and (4) adds two section 727 claims.

Jahelka's motion will be granted on the section 523(a) claims in Counts I–V of the amended complaint. Those counts will be dismissed, and Wachovia will be given one final chance to amend. The section 727(a) claims in Counts VI and VII will also be dismissed, though not for failure to state a claim. Counts VI and VII will be dismissed for lack of jurisdiction on the court's own motion because those claims are not ripe.

### a. Rule 12(b)(6) and Rule 9(b) Standards

Under Rule 12(b)(6), a complaint will be dismissed unless it clears "two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.2007).

---

1. Wachovia cites section 727(a)(3) in Count VII, but that section concerns the concealment, destruction, or loss of information, not a loss of assets. *See* 11 U.S.C. § 727(a)(3).

2. Jahelka spends most of his supporting memorandum responding to Wachovia's recitation of the district court's findings ("not worth the paper they are printed upon," he says) and Wachovia's assertion that he is "collaterally estopped" to relitigate them. He attaches a Loop stock certificate to his memorandum, presumably to refute the findings in some

way. As Wachovia notes, however, matters of issue preclusion are premature at the pleading stage. The court declines to consider Jahelka's materials outside the pleadings and declines to convert the motion to one for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 12(d) (made applicable by Fed. R. Bankr.P. 7012(b)). *See Slayton v. White (In re Slayton)*, 409 B.R. 897, 905 n. 9 (Bankr.N.D.Ill.2009) (noting court's "complete discretion" when it comes to conversion under Rule 12(d)).

First, the complaint must give the defendant fair notice of the claim. *See Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir.2006). A complaint will be dismissed if it is "so sketchy" that it does not provide "the type of notice ... to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir.2007). Although a complaint need not include " 'detailed factual allegations,' " " 'a formulaic recitation of the elements of a cause of action' " will not suffice. *Ashcroft v. Iqbal*, —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). At least some facts must support each element of the claim. *Id.* at 1949–50.

Second, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that right above a " 'speculative level.' " *Concentra*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Plausibility means the allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, —— U.S. at ——, 129 S.Ct. at 1949.

Where fraud is concerned, Rule 9(b) requires more. Rule 9(b) declares that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R.Civ.P. 9(b). "Particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story." *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir.1996) (internal quotation omitted); *see also Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir.2007). A complaint alleging fraud based on a misrepresentation must accordingly identify who made the misrepresentation, state the time, place and content of the misrepresentation, and describe how the misrepresentation was communicated. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir.2008); *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir.2003).

### b. Counts I–III: Section 523(a)(2)(A)

Counts I through III, the claims under section 523(a)(2)(A), will be dismissed— Counts II and III for failure to plead fraud with specificity under Rule 9(b), and Count I for failure to state a claim.

■ Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). Although some courts have applied a single test for determining nondischargeability under section 523(a)(2)(A), that section actually describes three separate grounds for holding a debt to be nondischargeable: false pretenses, false representation, and actual fraud. *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr.N.D.Ill.2001). Wachovia attempts to allege separate claims based on each ground. Count I is a claim for actual fraud, Count II is a claim for false pretenses, and Count III is a claim for false representations.

■ To state a claim under the false representation or false pretenses prong, a creditor must allege that the debtor owes a debt resulting from a false representation or omission of fact, a representation the debtor either knew was false or made with reckless disregard for its truth. *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010); *Wallner v. Liebl (In re Liebl)*, 434 B.R. 529, 538 (Bankr.N.D.Ill.2010); *Deady v. Hanson (In re Hanson)*, 432 B.R. 758,

771 (Bankr.N.D.Ill.2010); *Baermann v. Ryan (In re Ryan)*, 408 B.R. 143, 156 (Bankr.N.D.Ill.2009). The creditor must also allege that the debtor made the representation with an intent to deceive and the creditor justifiably relied on the representation. *Ojeda*, 599 F.3d at 716–17.

■ To state a claim under the actual fraud prong, the creditor must allege that a fraud occurred, the debtor intended to defraud, and the fraud created the debt. *Consumers Coop. Credit Union v. Munson (In re Munson)*, Nos. 10 B 1559, 10 A 218, 2010 WL 3768017, at *5 (Bankr.N.D.Ill. Sept. 17, 2010); *Liebl*, 434 B.R. at 538. Because actual fraud consists of essentially "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another," *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir.2000) (internal quotation omitted), allegations of misrepresentation and reliance are not required, *id.* at 894; *Munson*, 2010 WL, 3768017, at *4; *Hanson*, 432 B.R. at 772.

■ Counts II and III, the false pretenses and false representation claims, fail to comply with Rule 9(b). The amended complaint alleges that Jahelka and Loop "acted in concert to falsely create the appearance to Wachovia that Loop was a viable company capable of covering its losses" (Am. Compl. ¶ 9), and that Loop's shareholders, including Jahelka, created this appearance through "representations on the margin accounts" (*id.* ¶ 19). But that is all Wachovia alleges. Nowhere does Wachovia specify (1) who made the representations, (2) what representations were made, (3) how the representations were made, (4) when the representations were made, and (5) to whom the representations were made. The amended complaint contains no greater detail than its predecessor. Counts II and III will be dismissed.

■ Count I, the actual fraud claim, will also be dismissed but for a different reason. The problem with Count I is not a failure to comply with Rule 9(b)—although Rule 9(b) does apply to actual fraud claims, *see Lazzaro v. Weichman (In re Weichman)*, 422 B.R. 143, 154 (Bankr. N.D.Ind.2010)—but rather a failure to state an actual fraud claim at all. Again, the gist of the complaint is that Jahelka and others made false representations about Loop that caused Wachovia to open the margin account. No "non-representational fraud," as it is sometimes called, *see, e.g., Munson*, 2010 WL 3768017, at *5, is alleged.

It may be that Wachovia considers the Banco Loan and the later transfers of corporate assets "actual fraud," and certainly those actions do smack of fraud, as the district court found. But section 523(a)(2) does not except from discharge every debt somehow connected with a fraud. *One–on–One Fitness Personal Training Serv., Inc. v. Reyes (In re Reyes)*, Nos. 09 B 35198, 09 A 1277, 2010 WL 2757180, at *3 (Bankr.N.D.Ill. July 13, 2010). That section excepts only debts "for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent obtained* " by fraud. 11 U.S.C. § 523(a)(2) (emphasis added). The misrepresentations that allegedly caused Wachovia to open the margin account qualify, since the account's opening was an extension of credit. *See Advest, Inc. v. McCarthy*, 914 F.2d 6, 7 n. 2 (1st Cir.1990) ("A margin account is a device used to extend credit to investors who buy securities."); *May v. Lyon (In re Lyon)*, 348 B.R. 9, 18 n. 21 (Bankr.D.Conn.2006). But the amended complaint nowhere suggests that the Banco Loan or the transfers of corporate assets allowed Jahelka to "obtain[ ] money, property, or services," *Hellenic Enter. I, Inc. v. Vitogiannis (In re*

*Vitogiannis)*, Nos. 08 B 4144, 08 A 315, 2009 WL 1372065, at \*9 (Bankr.N.D.Ill. May 15, 2009), and it is hard to see how they could have.

Jahelka's motion to dismiss will be granted as to Counts I, II, and III of the amended complaint. Those counts will be dismissed with leave to amend.

### c. Count IV: Section 523(a)(4)

Count IV, the section 523(a)(4) claim, will also be dismissed for failure to state a claim. Section 523(a)(4) excepts from discharge, among other things, any debt "for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Count IV fails to allege facts suggesting that Jahelka owed Wachovia a fiduciary duty.

■ The term "fiduciary" in section 523(a)(4) is a matter of federal rather than state law, *In re McGee*, 353 F.3d 537, 540 (7th Cir.2003), and is usually held to mean the trustee of an express trust, *Hunter v. Philpott*, 373 F.3d 873, 875–76 (8th Cir. 2004). In this circuit, however, the court of appeals has taken a somewhat more expansive view, holding that a "fiduciary" relationship can exist either (1) when there is an express trust involving a specific *res,* or (2) when the parties have an unequal relationship pre-existing the wrong, a relationship in which there is "a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir.1994); *see also In re Frain*, 230 F.3d 1014, 1017 (7th Cir.2000); *Follett Higher Educ. Group, Inc. v. Berman*, 427 B.R. 432, 437–38 (N.D.Ill.2010), *appeal pending*, No. 10–1882, 2011 WL 181482 (7th Cir.); *Estate of Bartlett v. Vaccaro (In re Vaccaro)*, Nos. 09 B 8674, 09 A 476, 2010 WL 4053914, at \*3–4 (Bankr.N.D.Ill. Oct. 14, 2010); *Birriel v. Odeh (In re Odeh)*, 431 B.R. 807, 816 (Bankr.N.D.Ill.2010).

In Count IV of its amended complaint, Wachovia relies on the "unequal relationship" theory to claim a fiduciary relationship with Jahelka. Wachovia alleges that Loop was insolvent at all relevant times. (Am. Compl. ¶ 39). Because Jahelka was president of Loop and Loop was insolvent, Wachovia continues, Jahelka owed a fiduciary duty to Loop's creditors, including Wachovia. (*Id.* ¶ 40).

■ These allegations invoke concepts usually associated with state corporate law. Under Illinois law, corporate officers and directors typically owe fiduciary duties only to the corporation itself and its shareholders. *Paul H. Schwendener, Inc. v. Jupiter Elec. Co.*, 358 Ill.App.3d 65, 75, 293 Ill.Dec. 893, 829 N.E.2d 818, 828 (1st Dist. 2005) (citing *Brown v. Tenney*, 125 Ill.2d 348, 360, 126 Ill.Dec. 545, 532 N.E.2d 230, 235 (1988)); *Prime Leasing, Inc. v. Kendig*, 332 Ill.App.3d 300, 314, 265 Ill.Dec. 722, 773 N.E.2d 84, 96 (1st Dist.2002). When the corporation becomes insolvent, however, its assets are considered a trust fund for the payment of creditors, and the fiduciary duties of the officers and directors extend to creditors. *Paul H. Schwendener, Inc.*, 358 Ill.App.3d at 75, 293 Ill.Dec. 893, 829 N.E.2d at 828; *Prime Leasing*, 332 Ill.App.3d at 314, 265 Ill.Dec. 722, 773 N.E.2d at 96.

■ Of course, "a fiduciary relationship under state law in a corporate context does not a 'fiduciary' under 11 U.S.C. § 523(a)(4) make." *Martello v. Fowers (In re Fowers)*, 360 B.R. 888, 896 (Bankr. N.D.Ind.2007). Some lower federal courts in this circuit have nevertheless held that officers and directors of an insolvent corporation are also fiduciaries for purposes of section 523(a)(4). *See Energy Prods. Eng'g, Inc. v. Reuscher (In re Reuscher)*, 169 B.R. 398, 402–03 (S.D.Ill.1994) (finding fiduciary relationship); *Central Ill. Bank*

*v. Suhadolnik (In re Suhadolnik),* Nos. 07–71951, 08–7115, 2009 WL 801611, at *2 (Bankr.C.D.Ill. Mar.23, 2009) (same); *Salem Servs., Inc. v. Hussain (In re Hussain),* 308 B.R. 861, 867–68 (Bankr.N.D.Ill. 2004) (same); *but see Barber v. Martin (In re Martin),* 162 B.R. 710, 714 (Bankr. C.D.Ill.1993) (finding no fiduciary relationship).

The problem with these decisions, as a recent contrary decision points out, is that the "trust fund" doctrine from state corporate law creates a fiduciary relationship between officers and directors and *all* creditors of the corporation, not a single creditor like Wachovia, and creates a remedy for the benefit of *all* creditors, not a single creditor like Wachovia. *Associated Bank, N.A. v. Sever (In re Sever),* 438 B.R. 612, 629 (Bankr.C.D.Ill.2010); *see also Prime Leasing,* 332 Ill.App.3d at 314, 265 Ill.Dec. 722, 773 N.E.2d at 97 (noting that under Illinois law the fiduciary duty "runs to all creditors as a group, and not to any individual creditor"). The remedy for breach of fiduciary duty, in other words, is strictly a collective one. "The liability of an officer to the corporation and the creditor body . . . does not translate into recovery by an individual creditor, either before or after bankruptcy." *Sever,* 438 B.R. at 629; *see also Economic Dev. Growth Enters. Corp. v. McDermott (In re McDermott),* 434 B.R. 271, 281 (Bankr.N.D.N.Y. 2010) (rejecting "direct claims" of creditors under section 523(a)(4) employing "trust fund doctrine" applicable "only to derivative claims asserted on behalf of a corporation").

In Count IV, Wachovia alleges facts giving rise only to a fiduciary duty running from Jahelka to all creditors and thus a potential remedy for all creditors. No facts are alleged showing a fiduciary duty owed to Wachovia itself. In the absence of a fiduciary relationship "specifically between" Jahelka and *Wachovia,* there can be no nondischargeable debt under section 523(a)(4). *Sever,* 438 B.R. at 630.[3]

Jahelka's motion to dismiss Count IV of the amended complaint will be granted. Count IV will be dismissed with leave to amend.

### d. Count V: Section 523(a)(6)

Count V, the claim under section 523(a)(6), will be dismissed for failure to state a claim, as well. Count V is based on the same fraud allegations as the rest of the amended complaint, and section 523(a)(6) does not apply to debts based on fraud.

Section 523(a)(6) makes nondischargeable a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The general language of section 523(a)(6) would arguably encompass debts for fraud. *See Berkson v. Gulevsky (In re Gulevsky),* 362 F.3d 961, 963 (7th Cir.2004) (noting that "[f]raud . . . is an intentional tort and § 523(a)(6) makes many intentional torts nondischargeable").

But as discussed earlier, the Code has a provision, section 523(a)(2), that addresses the nondischargeability of debts related to fraud. Sections 523(a)(2) and (a)(6) are mutually exclusive. Debts resulting from fraud are therefore nondischargeable un-

---

**3.** Another problem with the theory underlying Count IV is that the fiduciary relationship under section 523(a)(4) must exist independently; it cannot arise as a result of the putative fiduciary's wrong. *Marchiando,* 13 F.3d at 1115–16; *Follett,* B.R. at 436. Here, one of the main wrongs about which Wachovia complains is Jahelka's action rendering Loop insolvent. But according to Count IV, Loop's insolvency is also what gives rise to the fiduciary relationship.

der section 523(a)(2) or not at all. *See S & T Bank v. Howard (In re Howard)*, Nos. 09–22557(RDD), 09–8269(RDD), 2009 WL 4544392, at *6 (Bankr.S.D.N.Y. Nov.25, 2009); *Starkey v. Krueger (In re Krueger)*, Nos. 99–31337, 99–7079, 2000 WL 33792711, at *8 (Bankr.D.N.D. May 10, 2000); *McCrary v. Barrack (In re Barrack)*, 201 B.R. 985, 989–93 (Bankr. S.D.Cal.1996), *rev'd on other grounds*, 217 B.R. 598 (9th Cir. BAP 1998); *Old Kent Bank–Chicago v. Price (In re Price)*, 123 B.R. 42, 45 (Bankr.N.D.Ill.1991).

 This result follows naturally from standard rules of statutory construction. Section 523(a)(6) is a general statutory provision addressing a range of tortious conduct, whereas section 523(a)(2) is a specific one concerned only with fraud, and it is well established that when two provisions govern a matter, the specific provision controls. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–85, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *see also Gulevsky*, 362 F.3d at 963 (discussing sections 523(a)(6) and 523(a)(2)(B)). If section 523(a)(6) applied to debts resulting from fraud, moreover, section 523(a)(2) would be superfluous, and it is well established that a statute should not be construed to render any provision superfluous. *In re Willett*, 544 F.3d 787, 792 (7th Cir.2008); *see also Gulevsky*, 362 F.3d at 963. The subsections of section 523(a) in particular should not be read to "obviate the need" for any other section. *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *Gulevsky*, 362 F.3d at 963; *cf. Grogan v. Garner*, 498

U.S. 279, 282 n. 2, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (implicitly acknowledging that sections 523(a)(2) and (a)(6) are mutually exclusive).

Because the only claim alleged in the amended complaint concerns a nondischargeable debt for an extension of credit obtained through fraud, Wachovia has no claim under section 523(a)(6). Count V will be dismissed with leave to amend.[4]

### e. Counts VI and VII: Sections 727(a)(3) and (a)(5)

 Finally, Counts VI and VII will be dismissed, but not on the grounds Jahelka urges. Jahelka insists these counts are premised on fraud and therefore fail to state claims for the same reasons as Counts II and III. But the claims in Counts VI and VII are objections to Jahelka's discharge under section 727(a), concern Jahelka's conduct in the bankruptcy case post-petition, and have nothing to do with fraud. Counts VI and VII must instead be dismissed on the court's own motion for lack of jurisdiction because the claims are unripe.

Section 727(a) has no direct application to this bankruptcy case. This case is a case under chapter 11 of the Bankruptcy Code. Section 727(a), however, appears in subchapter II of chapter 7 and as such applies "only in a case under such chapter." 11 U.S.C. § 103(b); *see Park View Fed. Sav. & Loan Ass'n v. Rich–Morrow Realty Co. (In re Rich–Morrow Realty Co.)*, 100 B.R. 893, 894–95 (Bankr. N.D.Ohio 1989); *Reynolds v. Miller (In re Miller)*, 80 B.R. 270, 270 (Bankr.W.D.N.Y.

---

4. The view that sections 523(a)(2) and (a)(6) are mutually exclusive is decidedly the minority. Two courts of appeals (apparently the only two to consider the question) have taken the opposite view. *See Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 857–58 (1st Cir. 1997); *In re Stokes*, 995 F.2d 76, 77 (5th Cir.1993) (per curiam). The *Printy* and *Stokes*

decisions, however, are inconsistent with the usual rules for interpreting statutes. *Printy* and *Stokes* also predate *Geiger's* instruction that the subsections of section 523(a) not be read to render other subsections superfluous. *Gulevsky* strongly suggests that the court of appeals for this circuit would reach a different conclusion.

1987) ("[S]ection 727 is inapplicable to a case which ... is pending under Chapter 11."). Section 727(a) therefore provides no basis, standing alone, to deny a chapter 11 debtor's discharge. *Torrington Livestock Cattle Co. v. Berg (In re Berg)*, 423 B.R. 671, 677 (10th Cir. BAP 2010); *In re Williams*, 227 B.R. 589, 594 (Bankr.D.R.I. 1998); *Star Bank, N.A. v. Reveal (In re Reveal)*, 148 B.R. 288, 293 (Bankr.S.D.Ohio 1992).

Section 727(a) applies in chapter 11 cases only under the limited circumstances described in section 1141(d) of the Code, the provision that concerns the discharge of chapter 11 debtors. *Williams*, 227 B.R. at 594; *Rich–Morrow Realty*, 100 B.R. at 895. Section 1141(d)(1)(A) declares that the confirmation of a plan discharges a chapter 11 debtor from all debts arising before confirmation. 11 U.S.C. § 1141(d)(1)(A). Section 1141(d)(3) then creates an exception to this broad discharge, stating:

> The confirmation of a plan does not discharge a debtor if—
>
> (A) The plan provides for the liquidation of all or substantially all of the property of the estate;
>
> (B) the debtor does not engage in business after consummation of the plan; and
>
> (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3). For section 1141(d)(3) to apply, however, all three elements must be met. *In re T–H New Orleans Ltd. P'ship*, 116 F.3d 790, 803 (5th

Cir.1997); *Berg*, 423 B.R. at 677; *In re Paolino*, No. 85–759F, 1991 WL 284107, at *11 (Bankr.E.D.Pa. Jan. 11, 1991). The debtor must therefore have proposed a plan providing for the liquidation of all or substantially all of the property of the estate. 11 U.S.C. § 1141(d)(3)(A); *see Paolino*, 1991 WL 284107, at *11; *Reveal*, 148 B.R. at 294; *Rich–Morrow Realty*, 100 B.R. at 895; *Miller*, 80 B.R. at 271.

In this case, Jahelka's plan filed on February 17, 2010, proposed nothing of the kind. It said: "The Debtor will retain all of his assets and will be obligated to make the payments required under the Plan." (Dkt. No. 142, Ex. A at 14).[5] But the February 17 plan is not the last word. After that plan was filed, Jahelka retained new counsel (*see* Dkt. Nos. 203, 214) who voiced his intention to file an amended plan. That plan is due to be filed on October 29, 2010 (Dkt. No. 216), but Jahelka has moved for an extension until December 10, 2010, to file the amended plan (Dkt. No. 235). Effectively, then, no plan is on file—certainly not one that satisfies section 1141(d)(3)(A).

With no plan before the court, any consideration of section 1141(d)(3)—and therefore section 727(a)—is premature. *See Paolino*, 1991 WL 284107, at *11; *Reveal*, 148 B.R. at 294; *Rich–Morrow Realty*, 100 B.R. at 895; *Miller*, 80 B.R. at 271; *but see Norwest Bank Neb., N.A. v. Tveten (In re Tveten)*, 70 B.R. 529, 535 (Bankr. D.Minn.1987).

The prematurity of Counts VI and VII deprives the court of jurisdiction. Article III of the Constitution restricts federal jurisdiction to "cases" and "controversies."

---

**5.** The February 17 plan also did not suggest that Jahelka would not engage in business after consummation of the plan, as section 1141(d)(3)(B) requires. *See* 11 U.S.C. § 1141(d)(3)(B). The same plan provision stated: "The Debtor will obtain funds to pay his obligations under the Plan from income generated from his employment and distributions from one or more companies in which he holds an ownership interest." (Dkt. No. 142, Ex. A at 14).

U.S. Const. art III, § 2, cl. 1. This limitation applies to all federal courts, including bankruptcy courts. *Day v. Klingler (In re Klingler)*, 301 B.R. 519, 523–24 (Bankr. N.D.Ill.2003). To satisfy the case or controversy requirement, the dispute between the parties must be "actual" and "ongoing." *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Federal courts have no power "to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). A claim that rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," is not ripe and presents no justiciable case or controversy. *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir.2008) (internal quotation omitted); *see also Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir.2008); *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1002 (7th Cir.2004).

Here, Jahelka has yet to file a plan that satisfies the requirements of section 1141(d)(3). He may never do so. Therefore, the question of whether his discharge should be barred under section 1141(d)(3) has not yet arisen and indeed may never arise. Wachovia's claims in Counts VI and VII concerning Jahelka's conduct in the bankruptcy case, and the questions those counts raise about whether he would receive a discharge if he were a chapter 7 debtor, are not yet ripe. *See Paolino*, 1991 WL 284107, at *11 (expressing the prematurity problem in terms of ripeness). The court has no jurisdiction to entertain them.

Subject matter jurisdiction is a threshold question, "the first question in every case," *State of Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir.1998), because without jurisdiction the "court cannot proceed at all," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotation omitted). Federal courts have a duty to examine their own subject matter jurisdiction, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), even where, as here, the parties have not questioned it, *Smith v. American Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir.2003). If jurisdiction is absent, dismissal *sua sponte* is not only appropriate but required. *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62–63 (2d Cir.2009).

Because the court lacks subject matter jurisdiction over Counts VI and VII of the amended complaint, those counts will be dismissed.[6]

### f. Leave to Amend

Wachovia has leave to file a second amended complaint and replead the claims dismissed here—even the seemingly dubious claims in Counts I, IV, and V. The next amendment, however, will be Wachovia's third stab at producing a viable pleading. Wachovia has experienced counsel with all the discovery from the district court action at his disposal. Writing a complaint that withstands a motion to dismiss—if such a complaint is possible—should be simple. The Seventh Circuit has said that pro se plaintiffs do not have "carte blanche for unlimited successive complaint amendments," *Tarkowski v.*

---

**6.** The dismissal of Counts VI and VII is without prejudice, as all jurisdictional dismissals are. *See Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir.1982). Should the filing of a new plan cause the dispute to ripen into a justiciable controversy, Wachovia will have leave to amend its complaint and reassert its section 727(a) claims, as long as it does so before the first date set for confirmation of the plan. *See* Fed. R. Bankr.P. 4004(a).

*Robert Bartlett Realty Co.*, 644 F.2d 1204, 1208 (7th Cir.1980), and if that is true for pro se plaintiffs, it is *a fortiori* true for Wachovia. Wachovia's third chance to state a claim will therefore be its last. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487 at 743–46 (2010) (noting that a court may deny leave to amend if the plaintiff "has had multiple opportunities to state a claim but has failed to do so"). The next dismissal will be with prejudice.

### 3. Conclusion

The motion of defendant Andrew A. Jahelka to dismiss the amended complaint of plaintiff Wachovia Securities, LLC, is granted in part and denied in part. The motion is granted as to Counts I–V. Those counts are dismissed with leave to amend. The motion is denied as to Counts VI and VII. Those counts are dismissed on the court's own motion for lack of jurisdiction. A separate scheduling order will be entered.